UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DAVID L. DUPREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 13-CV-3177 |
| ) | |
| GREGORY A. CLEMONS, et al., ) | |
| ) | |
| Defendants. ) | |

**MERIT REVIEW OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, filed this case from his incarceration in Big Muddy Correctional Center.  He has since been released on parole, but the Court is still required to conduct a merit review of the complaint under 28 U.S.C. § 1915A since Plaintiff filed his complaint while incarcerated.

In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor.  Turley v. Rednour, --- F.3d ---, 2013 WL 3336713 * 2 (7th Cir. 2013).  However, conclusory statements and labels are insufficient.  Enough facts must be provided to "'state a claim for relief that is

plausible on its face.'"  Alexander v. U.S., 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

## ANALYSIS

Plaintiff was allegedly detained in the Sangamon County Jail from August 5 2009, through July 22, 2011.  The statute of limitations for Plaintiff's federal civil rights claims is two years from the date of accrual.  Woods v. Illinois Dept. of Children and Family Serv., 710 F.3d 762, 768 (7th Cir. 2013)("To sum up, we reiterate our holding that the limitations period applicable to all § 1983 claims brought in Illinois is two years, . . . .").  Plaintiff filed this case on June 13, 2013 and many of the alleged adverse events occurred before June 13, 2011.  However, Plaintiff argues that all of his claims are timely based on various legal exceptions.  The Court, therefore, will not address the statute of limitations until the Defendants raise the issue.

Plaintiff's Complaint sets forth unrelated claims against multiple defendants.  See Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012)("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot. Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related

transactions."); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)("A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.").

However, dismissing the Complaint without prejudice to repleading properly joined claims could exacerbate Plaintiff's statute of limitations problems.  The Court will, therefore, first determine what federal claims are stated and then send the case for service. After Defendants have appeared through counsel, the Court will decide any statute of limitations defenses raised by Defendants. Then the Court will decide whether the remaining claims should be severed into separate cases.

**I.  Plaintiff states no claim for denial of access to the courts on the present allegations, but Plaintiff may file a statement offering more detail if Plaintiff believes that he can state a viable claim for denial of access to the courts.**

Plaintiff alleges that he was denied access to legal resources, a notary, and the assistance of a paralegal.  Denial of access to legal resources or to a legal library does not, by itself, state a denial of access claim.  Ortloff v. United States, 335 F.3d 652, 656 (7th Cir.

2003) (*abrogated on other grounds as recognized in* Parrott v. U.S., 536 F.3d 629, 635 (7th Cir. 2008)).  A denial of access claim arises only if Plaintiff's pursuit of a nonfrivolous legal claim or defense is concretely injured.  Id. (["W]hen a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim."); Pegues v. Springob, --- Fed.Appx. ---, 2013 WL 5878680 (7th Cir. 2013)(nonprecedential, not published in Federal Reporter)("Pegues must point to a concrete, nonfrivolous defense he might have raised but for his inability to access legal materials.")

   **A.  No plausible inference arises that Plaintiff suffered actual prejudice to his ability to pursue a meritorious claim in Plaintiff's small claims court action.**

   Plaintiff alleges that the theft of unidentified legal documents prevented him from appealing a small claims case in Sangamon County, case 2010-SC-2210.  The Court takes judicial notice of the docket of Plaintiff's small claims case, which shows that Judge Perrin ruled on September 9, 2010, that Plaintiff owed $2,000 in back rent because Plaintiff had a month-to-month tenancy and had not provided notice of his arrest to his landlord until November 2009.  (See attached docket sheet.)

Plaintiff contends that he could not file an appeal because the Jail librarian ignored Plaintiff's requests for information on how to appeal. However, Plaintiff later admits that he did file an appeal but that the appeal was erroneously docketed as correspondence.

Even if the librarian prevented Plaintiff from filing a timely and proper appeal, Plaintiff does not explain how his appeal had any arguable merit. In re Maxy, 674 F.3d 658, (7th Cir. 2012)(no access claim even though prisoner was impeded in challenging his conviction because prisoner had not identified a meritorious underlying claim). According to the Sangamon County Court records, Plaintiff filed another case in the Illinois Circuit Court about the same issue, which was dismissed as frivolous by Judge Belz, who ruled as follows:

> The Court finds, after a careful review of all documents submitted, that the applicant in good faith could not believe he has a meritorious claim or defense. The issues contained in the complaint were previously litigated in Sangamon County case 10-SC-2210. After hearing evidence in this matter, Associate Judge Perrin ruled in favor of the same Defendants who are named in this lawsuit. This nearly three year old landlord/tenant dispute has been previously decided and this lawsuit is clearly frivolous in nature.

Dupree v. Johnson, et al., 2012-L-000285 (docket sheet attached). Plaintiff's present allegations do not allow a plausible inference that he was hindered in his pursuit of a nonfrivolous appeal.

**B. No plausible inference arises that Plaintiff was denied access to the Court regarding his criminal case.**

Plaintiff alleges that the theft of unidentified legal documents relating to his criminal case, 09-CF-689 (Sangamon County), caused Plaintiff to plead guilty. However, the docket in that case shows that Plaintiff was appointed counsel in his criminal proceedings. (See docket sheet attached.) Appointed counsel satisfies Plaintiff's constitutional right to access the courts. U.S. v. Sykes, 614 F.3d 303, 311 (7th Cir. 2010)("We have long interpreted [Supreme Court precedent *Bounds* to give the government the choice to provide either access to a law library or access to counsel or other appropriate legal assistance.")

Plaintiff alleges that he was prevented from filing a motion to suppress or documents in support of a motion to suppress filed by Plaintiff's counsel. However, Plaintiff does not explain how the unidentified documents he wanted to file would have made any difference to the outcome of the motion to suppress hearing, in which he was already represented by counsel. As with Plaintiff's

small claims case, no plausible inference arises that Plaintiff suffered actual prejudice in his criminal case from the confiscation of unidentified papers.

**C. Plaintiff's allegations about other cases he was prevented from pursuing do not allow a plausible inference that Plaintiff was denied the ability to pursue a nonfrivolous claim.**

Plaintiff identifies a District Court case—<u>Dupree v. Commissioner of Social Security</u>, 10-CV-3280 (C.D. Ill.)—but Plaintiff does not explain how he was actually prevented from pursuing an arguable claim in that case.  That case was dismissed because Plaintiff had not exhausted his administrative remedies.

Plaintiff also identifies an Illinois Supreme Court case, 2010-MR-680, but he does not explain what that case was about or how he was hindered from pursuing a nonfrivolous claim.

**II. Plaintiff states a possible claim arising from the alleged policy against allowing pretrial detainees to deposit checks sent to them at the Jail.  This claim is stated against Sheriff Williamson and Superintendent Strayer.**

Plaintiff alleges that checks sent to him at the Jail were stolen or that Plaintiff was denied his ability to deposit those checks in his Jail trust fund account or in an account outside the Jail.  In particular, Plaintiff was sent the following checks at the Jail:  1) a check from the Illinois Department of Aging for $209.03 in

September 2009; 2) a social security check for $674 in October 2009; and, 3) a settlement check from Universal Casualty for $842.31 in October 2009.  Plaintiff alleges that the Jail policy for pretrial detainees required these checks to be held in inventory.  Plaintiff sought to endorse and deposit the checks in his Jail trust fund account or give the endorsed checks to family members to contribute to their support.  Plaintiff also alleges that the check from the Illinois Department on Aging was eventually stolen or lost.

He alleges that this policy affects mostly black inmates, but no plausible inference arises that non-black pretrial detainees are treated differently.  Plaintiff does not allege that the policy is applied unequally to pretrial detainees depending on a pretrial detainee's race.

At this point the Court cannot rule out a claim arising from the alleged policy denying pretrial detainees possession and/or use of checks sent to them at the Jail, particularly given that Plaintiff was detained at the Jail for nearly two years.  This claim proceeds against Defendants Williamson and Strayer.

**III.   Plaintiff states an arguable claim for deliberate indifference to his serious medical and psychiatric needs. Plaintiff also states a claim that needed medical or psychiatric care was refused in retaliation for Plaintiff's complaints.  These**

**claims are stated against Defendants Nurse Ramsey, Dr. Lochard, and Social Worker Lydia Hickis.**

In February 2011 and on other dates, Plaintiff was allegedly deprived of prescribed medications for his serious psychiatric and medical conditions. Nurse Lucy Ramsey was one of the health care professionals allegedly personally responsible for this deprivation, as well as for depriving Plaintiff of prescribed pain medicine for Plaintiff's epididymitis. Plaintiff alleges that he was wrongly charged medical copays for medical treatment and prescriptions. Also, Plaintiff was allegedly denied access to see a psychiatrist in March 2010.

These allegations state an arguable claim for deliberate indifference to Plaintiff's serious medical and psychiatric needs. Plaintiff also alleges that treatment was withheld in retaliation for Plaintiff's complaints which states a First Amendment retaliation claim.

**IV. Plaintiff states arguable First Amendment retaliation claims against Defendants Clemons, Durr, Fox, Smith, Kirby, Bouvet, Brent, Berola, Ealey, Moore, Hudgings, and Loftus.**

Plaintiff wrote letters to community leaders about Plaintiff's lack of mental health and medical treatment. Allegedly in retaliation for those letters, Officers Fox, Smith, and Kirby

conspired with Plaintiff's cellmate Terry Brewer to frame Plaintiff. In furtherance of that conspiracy, Plaintiff's cellmate falsely accused Plaintiff of sexual misconduct, causing Plaintiff's placement in segregation. Officer Clemons also retaliated against Plaintiff for Plaintiff's complaints about Plaintiff's stolen check by transferring Plaintiff to the pedophile wing and/or a high risk wing. A false charge of sexual assault was also filed against Plaintiff, allegedly in retaliation for Plaintiff's complaints.

In or around December 2010, Plaintiff informed Officers Hudgins and Berola that another inmate had a shank. Officers Berola, Ealey, Moore, and Hudgings tried unsuccessfully to frame Plaintiff for possessing the shank in retaliation for Plaintiff's complaints. In January 2011, the disciplinary charges against Plaintiff for the shank and the sexual assault were dropped. However, Plaintiff was allegedly kept in segregation for false reasons per the orders of Officers Clemons and Durr.

In mid to late January 2011, Officers Clemons and Bouvet conspired to write a false ticket against Plaintiff for tampering with the food slot in his door. A campaign of additional false disciplinary tickets against Plaintiff allegedly followed at the behest of Officers Clemons and Brent.

On February 11, 2011, Officer Kirby tried to move Plaintiff into a cell with inmate Terry Brewer again. Plaintiff complained and was moved to G-Block, a maximum security block where the heat was not working, allegedly in retaliation for his complaint.

On March 11, 2011, Officer Loftus allegedly tried to force Plaintiff to take an HIV test. When Plaintiff refused, Officer Loftus retaliated by placing Plaintiff in a high risk cell.

These allegations allow a plausible inference that Plaintiff was retaliated against for writing letters, grievances, and for other protests about his treatment in prison. At this point the Court cannot rule out a First Amendment retaliation claim.

## V. Plaintiff states an arguable claim that he was denied the right to vote.

Plaintiff alleges that he was denied his right to vote in the 2010 general election when Correctional Officer Wyse took Plaintiff's absentee ballot and did not return the ballot. At this point, the Court cannot rule out a claim that Plaintiff was intentionally denied his right to vote.

## VI. Plaintiff states a failure to protect claim against Officers Krueger, Doetsch, Kirby, and Underwood.

In November 2010, Officer Krueger moved Plaintiff into a cell with inmate Charles Harris, an allegedly violent inmate with severe

mental health problems.  Plaintiff requested to be moved, only to be placed by Officer Krueger with inmate Robert James, also a violent and mentally disturbed individual.  Plaintiff's pleas to be moved were ignored by Officers Krueger, Doetsch, Kirby, and Underwood, and other officers working "booking" on the 7 a.m. to 3:00 p.m. shift.  Inmate James eventually did attack Plaintiff, causing Plaintiff injury.

These allegations allow a plausible inference that Plaintiff was intentionally and knowingly placed in a situation which presented a substantial risk of serious harm to Plaintiff, in violation of Plaintiff's constitutional rights.

## VII.  Plaintiff states a claim against Officer Kirby for placing Plaintiff in a cell block with no heat in February.

Plaintiff alleges that he was placed on a wing without any heat in February 2011.  At this point, Plaintiff states an arguable claim that the cold conditions violated his constitutional rights.

## VIII.  The involvement of Officers Lisa Mercier, Brenda James, Candace Cain, James Wyse, and Anthony Johnson cannot be ruled out at this stage, even though their personal involvement in any of the alleged violations is unclear.  After the Court resolves statute of limitations issues, the Court may direct Plaintiff to explain these Defendants' personal involvement in the remaining claims.

## IX. No claim is stated against Dr. Tarter.

Dr. Tarter is a urologist at St. John's Hospital. No plausible inference arises from Plaintiff's allegations that Dr. Tarter is a government actor. Section 1983 claims can be pursued only against state actors. 42 U.S.C. § 1983. Even if Dr. Tarter were a state actor, the allegations do not suggest that Dr. Tarter was deliberately indifferent to any of Plaintiff's serious medical needs. Dr. Tarter will be dismissed.

## X. Plaintiff states no claim arising from the alleged failure to properly investigate or respond to Plaintiff's complaints and grievances.

Plaintiff alleges that his grievances, complaints, and requests for investigations regarding all these incidents were ignored, refused, or not properly handled. However, a biased grievance system or the refusal to investigate, take corrective action, or file charges does not violate the Constitution. *See, e.g.,* Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)("a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an

administrative complaint does not cause or contribute to the violation."); Soderbeck v. Burnett County, 752 F.2d 285, 293 (7th Cir. 1985)("Failure to take corrective action cannot in and of itself violate section 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior . . . .").

For similar reasons, Plaintiff states no claim regarding his allegation that inmates who stole Plaintiff's bag of coffee, peanut butter wafers, and honey buns from Plaintiff's cell were not punished but were only moved to a different cell.  Jail officials are not constitutionally required to replace an inmate's property which is stolen by another inmate or to punish inmates for every infraction.

**XI.  Plaintiff states no claim arising from alleged interference with his outgoing or incoming mail or the reading of his alleged legal correspondence.**

Plaintiff alleges that in December 2009 he placed several pieces of outgoing mail in the Jail mail box "to no avail," which the Court construes as an allegation that this mail was not sent to the addressees.  Plaintiff allegedly tried to send mail to an Attorney Timothy Hudspeth in February 2011, but Mr. Hudspeth told Plaintiff that he still had not received the documents after two

weeks.  A Circuit Clerk allegedly sent to Plaintiff mail in August and September of 2010, but Plaintiff alleges he never received it.  Plaintiff also alleges that delivery of his incoming mail was intentionally delayed for several hours.

A systemic problem with the delivery of incoming or outgoing mail would state a constitutional claim, but Plaintiff's own exhibits and allegations show that Plaintiff successfully mailed out and received many pieces of mail during his detention at the Jail.  Sporadic problems with mail delivery such as Plaintiff alleges do not rise to the level of constitutional violations.  Rowe v. Shake, 196 F.3d 778 (7th Cir. 1999)(short term, sporadic delays in receiving mail did not state a claim for a constitutional violation).

Plaintiff alleges that his confidential legal mail was opened outside of his presence, but he references mail sent to him from the Court or state agencies.  Mail from the Clerk, the Court, or a government agency generally is not confidential and may be opened outside an inmate's presence.  Guarjardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010)(opening of letters from courts and agencies outside of the plaintiff's presence did not state constitutional claim).  Plaintiff alleges that confidential mail from an Attorney Althea Welsh was opened one time, but Attorney Welsh

works for the Attorney Registration and Disciplinary Commission, according to the ARDC website. Attorney Welsh could not be representing Plaintiff in any proceedings, and Plaintiff does not explain how correspondence from Welsh might be confidential.

Plaintiff also alleges that filings in his small claims case were copied and distributed to Jail officials before being mailed. However, Plaintiff's filings in court are of public record. The Court sees no constitutional violation in the alleged copying of documents intended to be filed in a case of public record.

**IT IS THEREFORE ORDERED:**

1)    Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states the constitutional claims set forth above. By December 6, 2013, Plaintiff may clarify his claims for denial of access to the courts, explaining how he suffered actual injury to his ability to pursue a nonfrivolous claim.

2)    This case proceeds solely on the claims identified above. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time.

4) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from the date the waiver is sent to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding

addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

    6) Defendants' Answer deadline will be set after the Court rules on any statute of limitations defenses raised by Defendants.

    7) This District uses electronic filing, which means that, after Defense counsel has filed an appearance, Defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

    8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address

or phone number will result in dismissal of this lawsuit, with prejudice.

9) **If a Defendants fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

**IT IS FURTHER ORDERED:**

**(1) The clerk is directed to attempt service on Defendants pursuant to the standard procedures, except that only one copy of the 94-page complaint shall be sent with the waivers of service to Defendants located at the Sangamon County Jail;**

**(2) Plaintiff's Motion for an Emergency Supervisory Order is denied (d/e 10) to the extent Plaintiff seeks other action from this Court.**

**(3) Defendant Dr. Tarter is dismissed. The clerk is directed to terminate Dr. Tarter.**

**(4) Plaintiff's motion for the Court to try to recruit pro bono counsel is denied (d/e 4) with leave to renew after Plaintiff demonstrates that he has tried to find counsel on his**

**own. Typically, a plaintiff makes this showing by writing to several different law firms and attaching the responses to the motion for appointment of counsel.**

ENTERED: November 25, 2013

FOR THE COURT:

                                        <u>s/Sue E. Myerscough</u>
                                        SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE